IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 6, 2019 Session

## RHONDA WILLEFORD, ET AL. v. TIMOTHY P. KLEPPER, M.D., ET AL.

**Appeal from the Circuit Court for Overton County
No. 2015-CV-7    Jonathan L. Young, Judge**

—————————————————————

### No. M2016-01491-SC-R11-CV

—————————————————————

We granted review in this case to determine whether Tennessee Code Annotated section 29-26-121(f) violates the separation of powers clause in the Tennessee Constitution. The statutory provision allows defense counsel to conduct ex parte interviews with patients' non-party treating healthcare providers in the course of discovery in a healthcare liability lawsuit. We hold that section 29-26-121(f) is unconstitutional as enacted, to the limited extent that it divests trial courts of their inherent discretion over discovery. We also conclude that the statute can be elided to make it permissive and not mandatory upon trial courts. As such, we hold that the elided statute is constitutional. We vacate the trial court's qualified protective order entered in this case and remand the case to the trial court for reconsideration based on the guidance set forth in this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Circuit Court Vacated; Remanded to the Circuit Court for Overton County**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined. HOLLY KIRBY, J., filed a separate opinion concurring in part and dissenting in part.

Philip N. Elbert and Jeffrey A. Zager, Nashville, Tennessee, for the Plaintiff/Appellant, Rhonda Willeford.

Dixie W. Cooper, Nashville, Tennessee, for the Defendants/Appellees, Timothy P. Klepper, M.D., and Overton Surgical Services.

Christopher A. Vrettos, Nashville, Tennessee, for the Defendant/Appellee, Livingston Regional Hospital, LLC, d/b/a Livingston Regional Hospital.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Stephanie A. Bergmeyer, Assistant Attorney General, for the Defendant-Intervenor/Appellee, State of Tennessee.

Peter B. Winterburn and Alexander H. Park, Memphis, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

W. Bryan Smith, Memphis, Tennessee; John Vail, Washington, D.C.; Brian G. Brooks, Greenbrier, Arkansas, for the amicus curiae, Tennessee Trial Lawyers Association.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND[1]

The plaintiff, Rhonda Willeford, is the surviving daughter of the decedent in this case, Jewel Margaret Colson. On October 16, 2013, Ms. Colson was admitted to Defendant Livingston Regional Hospital's emergency room. Following a CT scan and examination, Ms. Colson was diagnosed with a bowel obstruction, among other things, and transferred to the Intensive Care Unit. The attending physician, Michael Cox, MD, ordered a surgical consult with Defendant Timothy Klepper, MD, a general surgeon, for treatment related to Ms. Colson's gastrointestinal problems. Over the next several days, Ms. Colson was treated and evaluated by Dr. Klepper and several other physicians. Despite treatment, Ms. Colson's health continued to decline, and she died on October 21, 2013.

In 2015, Ms. Willeford filed this healthcare liability wrongful death lawsuit on behalf of Ms. Colson (hereinafter "the decedent"). The lawsuit named as defendants Dr. Timothy P. Klepper, Overton Surgical Services assumed name of Algood Medical Clinic d/b/a AMG-Livingston, LLC, and Livingston Regional Hospital, LLC d/b/a Livingston Regional Hospital (collectively "the Defendants"). Ms. Willeford alleged that the Defendants' negligent treatment of the decedent fell below the applicable standard of care and resulted in the decedent's death.[2]

---

[1] Because this is an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the facts are taken from the parties' pleadings. We presume the facts to be true for purposes of this appeal.

[2] The complaint asserted that Tennessee Code Annotated section 29-39-102, which limits recovery of noneconomic damages to $750,000, is unconstitutional and therefore void. This issue is not presented in this appeal. The trial court allowed the State of Tennessee to intervene as a defendant for purposes of defending the constitutionality of Tennessee Code Annotated section 29-39-102.

In the course of discovery, the Defendants filed a motion for a qualified protective order pursuant to Tennessee Code Annotated section 29-26-121(f).[3] The motion specifically requested that the Defendants be permitted to conduct interviews with the decedent's non-party treating healthcare providers, outside the presence of Plaintiff's counsel. See Tenn. Code Ann. § 29-26-121(f) (2012 & Supp. 2018).

In response, Ms. Willeford argued that the trial court should deny the Defendants' motion because Tennessee Code Annotated section 29-26-121(f) is unconstitutional. Ms. Willeford contended that, by mandating that trial courts *must* issue qualified protective orders allowing defendants to conduct ex parte interviews with claimants' treating healthcare providers, the statute deprives the trial court of its inherent authority over court proceedings. Thus, she argued that the statute violates the separation of powers clause in the Tennessee Constitution. The State of Tennessee intervened in support of the constitutionality of Tennessee Code Annotated section 29-26-121(f), arguing that the Tennessee legislature properly exercised its power in enacting the statute.

The trial court granted the Defendants' motion to conduct ex parte interviews with the decedent's non-party treating healthcare providers. The trial judge commented from the bench that he did not like Tennessee Code Annotated section 29-26-121(f), stating that "anytime that the legislature says the Court shall do something, I think that's an overstepping of their bounds." The trial court believed, however, that it was not a trial judge's place to declare a statute unconstitutional. Thus, the court entered a written qualified protective order allowing the interviews.

Ms. Willeford subsequently sought permission for an interlocutory appeal of the trial court's qualified protective order pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, in order to raise the issue of whether Tennessee Code Annotated section 29-26-121(f) violates the separation of powers doctrine embodied in article II, sections 1 and 2, of the Tennessee Constitution.[4] The trial court granted the motion for

---

[3] Tennessee Code Annotated section 29-26-121(f)(1) provides:

Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101. Such petition shall be granted under the following conditions . . . .

[4] Article II, sections 1 and 2, of the Tennessee Constitution states:

Section 1. The powers of the government shall be divided into three distinct departments: legislative, executive, and judicial.

- 3 -

interlocutory appeal, but the Court of Appeals denied Ms. Willeford's application for permission to appeal. Ms. Willeford then sought permission to appeal to this Court, which we granted.

## BACKGROUND ON EX PARTE INTERVIEWS

Before addressing Ms. Willeford's arguments, we find it helpful to provide a history of the developments in this area of the law.

This Court has recognized that, at common law, there was no privilege for physician-patient communications. Quarles v. Sutherland, 389 S.W.2d 249, 250–51 (Tenn. 1965). The Quarles Court further observed that, because "our Legislature has not seen fit to act on the matter" by enacting a statute to the contrary, the Court "must apply the common law rule." Id. at 251.

In 1996, the United States Congress passed the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, tit. II, § 262(a), 110 Stat. 1936 (1996). See 42 U.S.C. § 1320d et seq. "Congress enacted HIPAA, in part, to protect the security and privacy of [health information]." Wade v. Vabnick-Wener, 922 F. Supp. 2d 679, 687 (W.D. Tenn. 2010) (alteration in original) (quoting Law v. Zuckerman, 307 F. Supp. 2d 705, 710 (D. Md. 2004)).

The Department of Health and Human Services was given broad authority by Congress to then "promulgate rules and regulations protecting the privacy of patient health information." Id. (citation omitted). These regulations "place strict limitations on the ability of certain health care providers to release a patient's medical records or discuss the patient's medical history without the express consent of the patient." Id. (citation omitted).

Because "HIPAA's definition of health information includes oral information . . . , the statute covers oral interviews." Caldwell v. Baptist Mem'l Hosp., No. W2015-01076-COA-R10-CV, 2016 WL 3226431, at *5 (Tenn. Ct. App. June 3, 2016) (citing 45 C.F.R. § 160.103), perm. app. denied (Tenn. Oct. 21, 2016). Defined exceptions to HIPAA's prohibitions against disclosure include the disclosure of protected health information for judicial and administrative proceedings. 45 C.F.R. § 164.512(e) (2016). None of HIPAA's provisions, however, address ex parte interviews with healthcare providers. See Myles J. Poster, HIPAA Confusion: How the Privacy Rule Authorizes "Informal" Discovery, 44 U. Balt. L. Rev. 491, 504–06 (2015).

---

Section 2. No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.

Tenn. Const. art II, §§ 1-2.

- 4 -

Tennessee also has enacted legislation pertaining to the privacy of patients' medical records and information, including the Medical Records Act, Tennessee Code Annotated § 63-2-101(b)(1)(A) (2017) ("Except as otherwise provided by law, such patient's medical records shall not constitute public records, and nothing contained in this part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs."), and the Patient's Privacy Protection Act, Tennessee Code Annotated § 68-11-1502 (2013) ("Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility."); id. § 68-11-1503 (limiting disclosure of patient's medical and personal information).

Before HIPAA, state approaches to ex parte interviews with plaintiffs' treating healthcare providers were not uniform. Compare Samms v. Dist. Court, Fourth Judicial Dist. of State of Colo., 908 P.2d 520, 526 (Colo. 1995) (holding that Colorado discovery rules permit defense counsel to conduct informal interviews with plaintiffs' physicians), and Green v. Bloodsworth, 501 A.2d 1257, 1258–59 (Del. Super. Ct. 1985) (permitting informal discovery, including defense counsel's conferring directly with plaintiffs' physicians), with Roosevelt Hotel Ltd. P'ship v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986) (stating that the court "agree[d] with those jurisdictions that have refused to order the execution of waivers and ex parte interviews" and that its "discovery rules do not provide for such a procedure"), and Crist v. Moffatt, 389 S.E.2d 41, 47 (N.C. 1990) (holding that "defense counsel may not interview plaintiff's nonparty treating physicians privately without plaintiff's express consent").

Since the enactment of HIPAA, the lack of uniformity as to ex parte interviews has continued. Several states allow defense counsel to conduct ex parte interviews with plaintiffs' treating healthcare providers. See, e.g., Moreland v. Austin, 670 S.E.2d 68, 72 (Ga. 2008) (allowing informal interviews between defense counsel and plaintiff's treating physicians, as long as defense counsel "first obtain[s] a valid authorization[] or court order or otherwise comply with the provisions of 45 CFR § 164.512(e)"); Caldwell v. Chauvin, 464 S.W.3d 139, 159–60 (Ky. 2015) (holding that neither Kentucky law nor HIPAA prohibits ex parte interviews); Holman v. Rasak, 785 N.W.2d 98, 106 (Mich. 2010) ("Ex parte interviews are permitted under Michigan law, and nothing in HIPAA specifically precludes them. Because it is possible for defense counsel to insure [sic] that any disclosure of protected health information by the covered entity complies with 45 C[.]F[.]R[.] § 164.512(e) by making 'reasonable efforts' to obtain a qualified protective order, HIPAA does not preempt Michigan law concerning ex parte interviews."); Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm., 855 A.2d 608, 623 (N.J. Super. Ct. Law Div. 2003) (recognizing that ex parte interviews are permitted under state law); Arons v. Jutkowitz, 880 N.E.2d 831, 842 (N.Y. 2007) (holding that state law allowing ex parte interviews did not conflict with HIPAA); Holmes v. Nightingale, 158 P.3d 1039, 1041 (Okla. 2007) (HIPAA and Oklahoma law permit ex parte communications with plaintiffs' healthcare providers).

Even more states, however, prohibit ex parte interviews with plaintiffs' treating healthcare providers. See, e.g., Hasan v. Garvar, 108 So. 3d 570, 578 (Fla. 2012) (holding Florida's patient confidentiality statute "prohibits ex parte meetings between nonparty treating physicians and others outside the confidential relationship whether or not they intend to discuss privileged or non-privileged matters without measures to absolutely protect the patient and the privilege"); Wood v. Am. Nat'l Prop. & Cas. Ins. Co., 1 So. 3d 764, 768 (La. Ct. App. 2008) (recognizing that defendants may obtain patients' medical information only through testimony at trial or use of "proper discovery methods," which do not include ex parte communications); State ex rel. Proctor v. Messina, 320 S.W.3d 145, 157 (Mo. 2010) (interpreting HIPAA as not allowing ex parte communications "because the trial court has no general oversight of the meeting or any control over it"); Leavitt v. Siems, 330 P.3d 1, 8 (Nev. 2014) ("[W]e conclude that there is no need to allow ex parte communication with the opposing party's experts absent express consent."); Sorensen v. Barbuto, 177 P.3d 614, 619 (Utah 2008) (prohibiting ex parte communications because "not doing so undermines patient expectations of physician-patient confidentiality" and "appropriately limiting the scope of a treating physician's disclosures requires judicial monitoring that cannot occur in the context of ex parte communications"); Youngs v. Peacehealth, 316 P.3d 1035, 1041–43 (Wash. 2014) (holding that its prior bar on ex parte communications, announced in Loudon v. Mhyre, 756 P.2d 138 (Wash. 1988), survived amendments to the state's physician-patient privilege statute). See also Harrold-Jones v. Drury, 422 P.3d 568, 577 (Alaska 2018) (holding that "formal discovery methods are more apt to comply with law and promote justice in the vast majority of cases and that there will be few, if any, extraordinary situations in which an ex parte contact authorization order is necessary under HIPAA's litigation exception").

Tennessee's Rules of Civil Procedure neither provide for nor prohibit ex parte interviews in discovery. In civil practice, however, voluntary ex parte interviews generally are "available for use with non-expert witnesses prior to formal depositions." David L. Woodard, Shielding the Plaintiff and Physician: The Prohibition of Ex Parte Contacts with a Plaintiff's Treating Physician, 13 Campbell L. Rev. 233, 239 (1991).

Before the enactment of HIPAA and state legislation concerning the confidentiality of patient medical information, it was common practice in Tennessee for defense counsel to conduct ex parte interviews with plaintiffs' treating physicians. See, e.g., Alessio v. Crook, 633 S.W.2d 770, 780 (Tenn. Ct. App. 1982) (referring to plaintiff's treating physician as "available to all parties" for interview), superseded by statute, 1996 Tenn. Pub. Acts ch. 862, as recognized in Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 409 n.13 (Tenn. 2002); see also Alsip v. Johnson City Med. Ctr., No. E2004-00831-COA-R9-CV, 2005 WL 1536192, at *10 (Tenn. Ct. App. June 30, 2005) ("[D]efendants may be right when they contend that informal discussions

[between defense counsel and plaintiffs' healthcare providers] were once the order of the day[.]"), aff'd, 197 S.W.3d 722 (Tenn. 2006).

But practice in Tennessee changed with this Court's decision in Givens, 75 S.W.3d 383. In Givens, the plaintiff originally had filed suit in a separate case against an alleged tortfeasor for injuries sustained in a traffic accident. Id. at 391. The plaintiff later filed a lawsuit for vicarious liability against an alleged tortfeasor and his insurance carrier for their defense attorney's alleged abuse of the discovery process, alleging that the attorney had initiated private communications with the plaintiff's treating physician, which breached the physician's contract of confidentiality. Id. at 405.

The Givens Court observed Tennessee's enactment of several statutes requiring "physician[s] and others to keep a patient's medical records and identifying information confidential."[5] Id. at 407 (citing Medical Records Act, Tenn. Code Ann. § 63-2-101(b)(1); Patient's Privacy Protection Act, id. §§ 68-11-1502, -1503). Furthermore, according to the Givens Court, the enactment of these statutes brought about an expectation "that the physician will keep the patient's information confidential" and created "an implied covenant of confidentiality" arising from the contract for treatment. Id. The Court held that the physician breaches this implied covenant of confidentiality "by divulging medical information, without the patient's consent, through informal conversations with others." Id. at 409.

The Givens opinion created confusion among attorneys in Tennessee. See, e.g., Jerry O. Potter, Can We Talk?, Tenn. B.J., Nov. 2002, at 15, 20 ("The effect of [Givens] is to create a crisis for attorneys who engage in the defense of health-related malpractice suits. Without question, this decision will make the defense of malpractice suits difficult at best and impossible in many situations."); Bobby Russ, Can We Talk? The Rest of the Story or Why Defense Attorneys Should Not Talk to the Plaintiff's Doctors, Tenn. B.J., Feb. 2003, at 29, 32 ("Prohibiting ex parte interviews is supported by an abundance of legal authority and common sense policy arguments.").

Thus, the Court granted permission to appeal in Alsip v. Johnson City Medical Center in order "to clarify the meaning of our holding in Givens." 197 S.W.3d 722, 723 (Tenn. 2006). In Alsip, the Court considered whether the trial court erred by allowing defense counsel to engage in ex parte interviews with the decedent's non-party treating physicians. Id. at 725.

The Alsip Court noted that Givens "recognized an implied covenant of confidentiality in medical-care contracts between treating physicians and their patients." Id. (emphasis removed). The Court noted, however, that "[l]ike all contract terms,

---

[5] The Givens opinion was issued months before the HIPAA privacy rules and final security regulations became effective in April 2003.

however, the implied covenant of confidentiality becomes unenforceable when it offends public policy." Id. at 726 (citing Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002)).

The Alsip Court explained that, since the formal methods of discovery pursuant to Rule 26 are sufficient for defendants to access all of the relevant medical information, it was "reasonable to conclude that those formal discovery methods exclusively define the manner of disclosure in medical malpractice cases." Id. at 728 (emphasis removed). Furthermore, "'the confidential nature of the physician-patient relationship remains even though medical information is . . . subject to discovery' because the plaintiff's contractual right to medical confidentiality remains in all his health information not relevant to the malpractice lawsuit." Id. at 727–28 (emphasis removed) (quoting Crist, 389 S.E.2d at 46; Petrillo v. Syntex Labs., Inc., 499 N.E.2d 952, 959 (Ill. App. Ct. 1986)).

Thus, the Court concluded, "Neither the law nor public policy requires the plaintiff to bear the risk of disclosure of irrelevant confidential medical information in informal, private interviews with opposing counsel and non-party doctors." Id. at 730. Accordingly, "ex parte communications between the plaintiff's non-party physicians and defense attorneys are not allowed in the State of Tennessee." Id. at 724.

In 2012, the General Assembly abrogated the holdings in Givens and Alsip by adding subsection (f) to Tennessee Code Annotated section 29-26-121. See Hearing on S.B. 2789 Before the S. Judiciary Comm., 107th Gen. Assemb. (Tenn. Mar. 13, 2012) (statement of attorney witness Howard Hayden at 52:30); see also Hall v. Crenshaw, 449 S.W.3d 463, 467 n.2 (Tenn. Ct. App. 2014) (noting that legal scholars refer to the statute as "the Givens Fix"). Section 29-26-121(f) as enacted in July 2012 stated:

(1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101(a)(1), the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101(a)(2). Such petition *shall be granted* under the following conditions:

(A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;

(B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating

healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and

(C) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court.

(2) Any disclosure of protected health information by a healthcare provider in response to a court order under this section shall be deemed a permissible disclosure under Tennessee law, any Tennessee statute or rule of common law notwithstanding.

(3) Nothing in this part shall be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action.

Tenn. Code Ann. § 29-26-121(f) (2012) (effective July 1, 2012) (emphasis added).

Thus, the statute requires trial courts to permit defense counsel in healthcare liability actions to conduct ex parte interviews with non-party treating healthcare providers when defense counsel meets the conditions provided in the statute. Tenn. Code Ann. § 29-26-121(f)(1). The term "healthcare provider" includes physicians and other healthcare employees such as nurses. See Tenn. Code Ann. § 29-26-101(a)(2)(A)-(D) (2012 & Supp. 2019).

The Senate sponsor of the bill adding subsection (f) to section 29-26-121 stated that the purpose was to provide in pretrial procedure "equality among the [parties to a healthcare liability lawsuit] in terms of having access to informal discussions with [healthcare providers]." See Hearing on S.B. 2789 Before the S. Judiciary Comm., 107th Gen. Assemb. (Tenn. Apr. 11, 2012) (statement of Sen. Brian Kelsey at 5:56:40). Furthermore, an attorney witness stated,

What's happened is that there has become a very uneven playing field between plaintiffs and defendants where plaintiffs have the right of unfettered access to health care providers in order to investigate their claims whereas defense lawyers don't have the same access to speak with health care providers absent permission from the patient or the claimant.

Hearing on S.B. 2789 Before the S. Judiciary Comm., 107th Gen. Assemb. (Tenn. Mar. 13, 2012) (statement of attorney witness Howard Hayden, at 52:23).

Witnesses also pointed out that, under the rules of civil procedure, there was no way to take a discovery-only deposition of a treating healthcare provider. See id. (statement of attorney witness Howard Hayden, at 1:02:15, emphasizing the need for defense counsel to have informal discussions with non-party treating physicians so that counsel can know in advance what the treating physicians would say in a deposition because physicians' depositions are admissible at trial for all purposes under the rules).[6]

In 2013, the General Assembly added a provision to section 29-26-121(f), stating that protective orders on ex parte interviews with treating healthcare providers "shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant" to return or destroy the information at the end of the proceedings. Tenn. Code Ann. § 29-26-121(f)(1)(C)(i) (Supp. 2019) (effective July 1, 2013). This provision accords with HIPAA regulations. See 45 C.F.R. § 164.512(e)(1)(v).

In January 2015, the Tennessee Court of Appeals interpreted section 29-26-121(f), holding that, in ex parte interviews with treating healthcare providers, the statute did not give defendants the right to seek opinions on causation and standard of care. Dean-Hayslett v. Methodist Healthcare, No. W2014-00625-COA-R10-CV, 2015 WL 277114, at *13–14 (Tenn. Ct. App. Jan. 20, 2015), perm. app. denied and designated as not for citation (Tenn. Aug. 17, 2015).[7]

Within months, the legislature amended the statute to abrogate the Court of Appeals' holding by specifically providing that it was permissible for defense counsel to ask about "opinions as to the standard of care of any defendant, compliance with or breach of the standard, and causation of the alleged injury." See 2015 Tenn. Pub. Acts ch. 268 (adding Tenn. Code Ann. § 29-26-121(f)(2)).

## ANALYSIS

Against this backdrop, we now consider the issue before this Court. Ms. Willeford argues that Tennessee Code Annotated section 29-26-121(f) violates the separation of powers clause in the Tennessee Constitution. Accordingly, she asks this Court to reverse the trial court's grant of a qualified protective order which allowed the defendants in this

---

[6] "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that the witness is 'unavailable' . . . ." Tenn. R. Civ. P. 32.01(3). "Depositions of medical doctors may be read into evidence pursuant to Rule 32.01, T.R.C.P., because physicians are exempt from subpoena to trial under T.C.A. § 24-9-101." Faux v. Spears, No. 03A01-9312-CV-00433, 1994 WL 147830, at *1 (Tenn. Ct. App. Apr. 26, 1994).

[7] Although this Court designated the Dean-Hayslett opinion as "Not For Citation," we discuss it to provide background to legislation pertinent to this appeal.

- 10 -

case to take part in ex parte interviews with the decedent's non-party treating healthcare providers.

Standard of Review

Because issues of constitutionality and statutory construction are questions of law, we review them de novo with no presumption of correctness accorded to the legal conclusions of the courts below. See Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009); State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001).

Constitutionality of Section 29-26-121(f)

As this Court provided in State v. Lowe,

Article II, section 1, of the Tennessee Constitution provides that "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Section 2 of the same Article provides: "Limitation of powers. No person or persons belonging to one of these departments [set forth] shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." With respect to the judicial department, the Tennessee Constitution specifies that "the judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." Tenn. Const. art. VI, § 1. The Tennessee Supreme Court is a "direct creature of the Constitution" and "constitutes the supreme judicial tribunal of the [S]tate." Barger v. Brock, 535 S.W.2d 337, 340 (Tenn. 1976). The Tennessee Supreme Court "and its jurisdiction cannot be interfered with by the other branches of the government. *Its adjudications are final and conclusive upon all questions determined by it*, save those reserved to the federal courts, which may be reviewed by the Supreme Court of the United States." Clements v. Roberts, 144 Tenn. 152, 231 S.W. 902, 902 (1921) (emphasis added) (citing Miller v. Conlee, 37 Tenn. 432, 433 (1858); Dodds v. Duncan, 80 Tenn. 731, 734 (1884); State, to Use of Fletcher v. Gannaway, 84 Tenn. 124, 126 (1885)).

552 S.W.3d 842, 856 (Tenn. 2018).

"In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (citing State v. Robinson, 29 S.W.3d 476, 479-480 (Tenn. 2000); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997)). "[I]n reviewing [a] statute for a possible

constitutional infirmity, we are required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute." In re Burson, 909 S.W.2d 768, 775 (Tenn. 1995) (citing State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990)).

"The Court must uphold the constitutionality of a statute wherever possible[.]" State v. McCoy, 459 S.W.3d 1, 8 (Tenn. 2014). "[T]he Court must be controlled by the fact that our Legislature may enact any law which our Constitution does not prohibit, and the Courts of this State cannot strike down one of its statutes unless it clearly appears that such statute does contravene some provision of the Constitution." Holly v. City of Elizabethton, 241 S.W.2d 1001, 1004-05 (Tenn. 1951) (citing Joyner v. Priest, 117 S.W.2d 9, 11 (Tenn. 1938)).

This Court, however, has not spelled out clearly an analysis for considering a separation-of-powers issue in a case such as this when a statute effectively abrogates *case law*. In such a case, this Court must determine which entity has the ultimate authority over a particular legal issue.

We note that the Kentucky Supreme Court distinguishes between substantive law, which is under the authority of its legislature, and rules of practice and procedure, which are under the authority of its judiciary. Cabinet for Health & Family Servs. v. Chauvin, 316 S.W.3d 279, 285 (Ky. 2010) (citations omitted) ("[T]he legislature has the exclusive authority to enact substantive law, whereas this Court has the exclusive authority to enact 'rules of practice and procedure for the Court of Justice.'").[8] This distinction appears consistent with existing Tennessee law. Tennessee Code Annotated section 16-3-402 provides that "[t]he supreme court has the power to prescribe by general rules the forms of process, writs, pleadings and motions, and the practice and procedure in all of the courts of this state in all civil and criminal suits, actions and proceedings." Tenn. Code Ann. § 16-3-402 (2009). However, "[t]he rules prescribed by the supreme court pursuant to § 16-3-402 shall not abridge, enlarge or modify any *substantive* right, and shall be consistent with the constitutions of the United States and Tennessee." Tenn. Code Ann. § 16-3-403 (2009) (emphasis added).

"By the terms of our constitution, '[o]nly the Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state, and this inherent power 'exists by virtue of the [Constitution's] establishment of a Court and not by largess of the legislature.''" State v. McCoy, 459 S.W.3d 1, 9 (Tenn. 2014) (quoting State v. Mallard, 40 S.W.3d 473, 480–81 (Tenn. 2001)). The power over the practice and procedure of the courts "cannot be constitutionally exercised by any

---

[8] The Arkansas and Connecticut Supreme Courts have held similarly. See Broussard v. St. Edward Mercy Health Sys., Inc., 386 S.W.3d 385, 389 (Ark. 2012) ("Procedural matters lie solely within the province of this court." (citations omitted)); State v. Clemente, 353 A.2d 723, 727–28 (Conn. 1974) ("The substance-procedure test is merely one way of expressing what areas of the law fall within the sphere of legislative or judicial power under article second of the Connecticut constitution.").

other branch of government" because it "is inherent in the judiciary and necessary to engage in the complete performance of the judicial function." Mallard, 40 S.W.3d at 481 (citations omitted) (internal quotation marks omitted). Thus, although this Court has not expressly adopted this substantive versus procedural analysis, doing so would be consistent with our constitutional and statutory law. Accordingly, we conclude that adoption of the substantive versus procedural analysis is appropriate for the analysis of issues of constitutionality under the separation of powers provisions of the Tennessee Constitution.[9]

Thus, the Court must determine whether the provisions in the statute at issue in this case are procedural or substantive in nature. The Kentucky Supreme Court has provided some guidance in determining whether a given statute is substantive or procedural:

> In separating evidence law into substance and procedure, the best scholars draw a distinction between rules that predominantly foster accuracy in fact-finding and rules that predominantly foster other objectives. They classify the latter as substantive and place privileges in that category.

Chauvin, 316 S.W.3d at 285 (quoting Robert G. Lawson, Modifying the Kentucky Rules of Evidence—A Separation of Powers Issue, 88 Ky. L.J. 525, 580 (2000)).

We also find guidance from the Florida Supreme Court's opinion in Massey v. David:

> Of course, statutes at times may not appear to fall exclusively into either a procedural or substantive classification. We have held that where a statute contains some procedural aspects, but those provisions are so intimately intertwined with the substantive rights created by the statute, that statute will not impermissibly intrude on the practice and procedure of the courts in a constitutional sense, causing a constitutional challenge to fail. If a statute is clearly substantive and operates in an area of legitimate legislative concern, this Court will not hold that it constitutes an unconstitutional encroachment on the judicial branch. However, where a statute does *not* basically convey substantive rights, the procedural aspects of the statute cannot be deemed "incidental," and that statute is unconstitutional. Moreover, where this Court has promulgated rules that relate to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict.

---

[9] In adopting this test, we realize that the application of the test will be a fact-intensive, case-by-case analysis.

> Finally, where a statute has some substantive aspects, but the procedural requirements of the statute conflict with or interfere with the procedural mechanisms of the court system, those requirements are unconstitutional.

979 So. 2d 931, 937 (Fla. 2008) (internal citations and quotation marks omitted). See also In re SRBA Case No. 39576, 912 P.2d 614, 623 (Idaho 1995) (noting the court's previously adopted procedural versus substantive distinction, stating that substantive law "creates, defines, and regulates primary rights," whereas "practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated").

Moreover, this Court has provided clarity for understanding the procedural confines of the judiciary's authority:

> Among these inherent judicial powers are the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. As an essential corollary to these principles, any determination of what evidence is relevant, either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary. Indeed, a "court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate." Consequently, any legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent operation of the judicial branch of government, and no such measure can be permitted to stand.

Mallard, 40 S.W.3d at 483 (internal citations omitted).

Looking to the statute at issue, we first note that the overarching purpose of the Tennessee Health Care Liability Act, codified at Tennessee Code Annotated section 29-26-101 to -122, is not purely procedural. The governance of healthcare liability actions is an area of mutual concern for the legislature and the judiciary. See Williams v. SMZ Specialists, PC, No. W2012-00740-COA-R9-CV, 2013 WL 1701843, at *9 (Tenn. Ct. App. Apr. 19, 2013) ("The overall statutory scheme, including the pre-lawsuit notice requirement in Section 29-26-121, is driven by the Legislature's substantive public policy concerns, and therefore cannot be described as purely procedural." (citing Biscan v. Brown, 160 S.W.3d 462, 474 (Tenn. 2005)). Since its enactment, this Court has acknowledged the valid policy considerations motivating the general assembly to legislate in this area. See, e.g., Harrison v. Schrader, 569 S.W.2d 822, 826 (Tenn. 1978) ("At the time the legislature passed the statute of limitations eventually codified as Sec.

- 14 -

23-3415(a), T.C.A., this state and the nation were in the throes of what was popularly described as a 'medical malpractice insurance crisis.' . . . The legislature could have seen in this situation a threat not only to the medical profession and its insurers, but also to the general welfare of the citizens of this state. As liability costs skyrocketed, so would the cost of health care. Physicians would be encouraged to cease practice or contemplate early retirement, and the number of available physicians would decrease. The practice of 'defensive medicine,' spawned by fear of costly legal actions, would lead to a lower quality of health care in general. These considerations may or may not have been valid; however, it is apparent that they were accepted by the legislature and formed the predicate for its action." (footnote omitted)).

Indeed, the judiciary has upheld the constitutionality of various provisions of this statute that prescribe procedure. See, e.g., Harrison, 569 S.W.2d at 827–828 (holding that "[s]tatutes providing for the limitation of actions are, apart from equitable principles, 'exclusively the creatures of the legislative branch[,]'" and "it is not the role of this Court to pass upon the wisdom or lack thereof of the legislation under review" (citation omitted)); Newton v. Cox, 878 S.W.2d 105, 111 (Tenn. 1994) ("This Court has previously recognized that areas exist in which both the legislative and judicial branch have interests, and that in such areas both branches may exercise appropriate authority."); Jackson v. HCA Health Servs. of Tenn., Inc., 383 S.W.3d 497, 506–07 (Tenn. Ct. App. 2012) (holding that Tennessee Code Annotated section 29-26-122 (2009) did not violate the separation of powers clause of the Tennessee Constitution because that the statute was not in conflict with the Tennessee Rules of Civil Procedure). Although the examples provided above were instances in which the courts determined that the statutory provisions at issue were supplemental to court rules or case law, the case law above indicates the judiciary's longstanding recognition that this area of the law is one of mutual concern and overlapping authority. See Cardwell v. Bechtol, 724 S.W.2d 739, 753–54 (Tenn. 1987) ("Nevertheless, [the statutory provision at issue] does impose more rigorous procedural requirements on the plaintiff in a malpractice action, but, as this Court has previously observed in this regard, 'the conclusion is inevitable that the Legislature has sanctioned existing case law governing both substantive and evidentiary requirements, merely adding thereto . . . the additional expert witness requirements.'" (quoting Baldwin v. Knight, 569 S.W.2d 450, 453 (Tenn. 1978)).

Second, we hold that the overriding purpose of the particular provision at issue, section 121, which allows ex parte communication between defendants and plaintiffs' healthcare providers, is not purely procedural either. The creation of a privilege is substantive law which, at least in large part, is within the province of the legislature. See, e.g., Tenn. Code Ann. §§ 62-1-116 (accountant-client privilege), 23-3-105 (attorney-client privilege), 24-1-206 (clergy-penitent privilege), 24-1-211(f) (deaf person-interpreter privilege), 24-1-207 (psychiatrist-patient privilege); see also Tenn. R. Evid. 501 ("Except as otherwise provided by constitution, statute, common law, or by these or other rules promulgated by the Tennessee Supreme Court, no person has a privilege to:

- 15 -

(1) refuse to be a witness; (2) refuse to disclose any matter; (3) refuse to produce any object or writing; or (4) prevent another from being a witness or disclosing any matter or producing any object or writing.").  If the legislature has the authority to create a privilege, it is only logical that the legislature also has the authority to determine that a privilege, in a particular context, does not exist.

This Court's analysis in Alsip is consistent with this conclusion:

> Although no *testimonial privilege* protecting doctor-patient communications has ever been recognized by this Court or declared by Tennessee statute, in Givens v. Mullikin, 75 S.W.3d 383 (Tenn. 2002), we recognized an implied *covenant of confidentiality* in medical-care contracts between treating physicians and their patients.  This covenant forbids doctors from "releas[ing] without the patient's permission . . . any confidential information gained through the [physician-patient] relationship."  Givens, 75 S.W.3d at 407.  We explained in Givens that the covenant of confidentiality arises not only from the implied understanding of the agreement between patient and doctor, but also from a policy concern that such private and potentially embarrassing information should be protected from public view.  Id. (citing in support Tennessee Code Annotated sections 63-2-101(b)(1) (1997), 68-11-1502 (2001), and 68-11-1503 (2001), which are indicative of the General Assembly's desire to keep confidential a patient's medical records and identifying information).  Indeed, "[t]he relationship of patient to physician is a particularly intimate one [because] [t]o the physician we bare our bodies . . . in confidence that what is seen and heard will remain unknown to others."  Cua v. Morrison, 626 N.E.2d 581, 586 (Ind. Ct. App. 1993).  For this reason "the public has a widespread belief that information given to a physician in confidence will not be disclosed to third parties absent legal compulsion, . . . and [thus] the public has a right to have this expectation realized."  Duquette v. Superior Court in and for County of Maricopa, 161 Ariz. 269, 778 P.2d 634, 640 (Ct. App. 1989).

197 S.W.3d at 725–26 (alterations in original).  The Court then stated, however, that "the implied covenant of confidentiality becomes unenforceable when it offends public policy."  Id. at 726.

Because "the determination of public policy is primarily a function of the legislature," Alcazar v. Hayes, 982 S.W.2d 845, 851 (Tenn. 1998), the public policy, as reflected in state law adopted by the legislature, can vitiate the covenant of confidentiality.  Alsip, 197 S.W.3d at 726.  "Thus, the covenant of confidentiality is not absolute and can be voided when its enforcement would compromise the needs of society."  Id.

- 16 -

Stated another way, this court in <u>Alsip</u> determined that the public policy interest of protecting confidentiality dictated this Court's need to prohibit ex parte communication. <u>See id.</u> at 730 ("Because ex parte communications unnecessarily endanger the integrity of the covenant of confidentiality between patient and physician by risking disclosure of the decedent's medical information not relevant to the lawsuit, and because the formal methods of discovery provided for in Rule 26.01 suffice to provide the defendants with all the decedent's relevant medical information, we hold that the trial court erred by issuing the order in controversy here. Neither the law nor public policy requires the plaintiff to bear the risk of disclosure of irrelevant confidential medical information in informal, private interviews with opposing counsel and non-party doctors." (citation omitted)).

However, by enacting the statute at issue, which expressly allows ex parte communication in this context, the legislature changed the overriding public policy concern in this area. The more important policy interest in this particular context, according to the legislature, was equality of access to information and a balance of the interests of the parties in medical malpractice cases.

Because it was within the legislature's purview to modify the import of this public policy, we should yield to the change, even if the matter does touch upon an area within the province of the judiciary. <u>See</u> <u>Biscan</u>, 160 S.W.3d at 474 ("Although it is the province of this Court to prescribe rules for practice and procedure in the state's courts, where a decision of the legislature chiefly driven by public policy concerns infringes on that power we will generally defer to the judgment of the legislature."); <u>Bush v. State</u>, 428 S.W.3d 1, 16 (Tenn. 2014) ("However, even though this Court is "supreme in fact as well as in name" when it comes to Tennessee's courts, our commitment to cooperation among the three branches of government has prompted us to acquiesce in and to apply statutes affecting the operation of the courts when they do not interfere with the courts' adjudicative functions or otherwise impermissibly encroach on the Judicial Branch." (citation and footnote omitted)). Moreover, "it is not the role of this Court to pass upon the wisdom or lack thereof of the legislation under review. In the absence of constitutional infirmity such matters are ones of policy solely for the legislature." <u>Harrison</u>, 569 S.W.2d at 828 (citation omitted); <u>see also</u> <u>State v. Howard</u>, 504 S.W.3d 260, 270 (Tenn. 2016) ("[T]he General Assembly unquestionably has the constitutional and legislative authority to change the common law of this state[.]" (citation omitted)).

Thus, we hold that the overriding *purpose* of the statute at issue is within the authority of the legislature, or at least something to which the judiciary should yield if reasonably possible.

However, this conclusion does not end our inquiry. We also must address the specific language in section (f)(1) that effectively strips trial courts of their discretion.

- 17 -

Under section 29-26-121(f), if defendants identify in their petitions the non-party treating healthcare providers they wish to interview and the providers possess any information that is relevant to the lawsuit, "[s]uch petition *shall* be granted." Tenn. Code Ann. § 29-26-121(f)(1) (Supp. 2019) (emphasis added). See also Caldwell, 2016 WL 3226431, at *8-9 (when statutory conditions are satisfied, trial courts are not free to ignore the "mandates" of section 29-26-121(f) and instead order "discovery-only" depositions). Trial courts may impose limitations only when plaintiffs object and then only under strict conditions. See Tenn. Code Ann. § 29-26-121(f)(1)(B). In so doing, section 29-26-121(f) removes trial courts' control and discretion over a key aspect of discovery.

"It is well settled that decisions with regard to pre-trial discovery matters rest within the sound discretion of the trial court." Benton v. Snyder, 825 S.W.2d 409, 416 (Tenn. 1992). This authority includes the trial court's discretion to make discovery decisions based on the facts in a particular case. See, e.g., Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 42 (Tenn. 2005) ("Decisions concerning pretrial discovery are matters of a trial court's discretion." (citing Benton, 825 S.W.2d at 416; Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002))); see also Office of the Dist. Attorney of Phila. v. Bagwell, 155 A.3d 1119, 1138 (Pa. Commw. Ct. 2017) ("The discretion exercised by the court in granting or denying a discovery request goes straight to the heart of the judicial function and the prudential and ultimately constitutional constraints placed on judicial power.").

By removing any and all discretion from the trial courts in the decision to grant protective orders, the legislature, in its enactment of Tennessee Code Annotated section 29-26-121(f), impermissibly intruded on the authority of the judiciary over procedural matters. Thus, we must conclude that "the General Assembly overstepped its constitutional boundaries" in violation of the separation of powers clause in the Tennessee Constitution. See Lowe, 552 S.W.3d at 857.

Severability

Having concluded that the overriding purpose of the statute is within the purview of the legislature but that a portion of the statute unconstitutionally infringes on the issues within the sole prerogative of the judiciary, we next look to determine whether the unconstitutional portion of the statute may be elided to preserve the remainder of the statute. "Under the doctrine of elision, a court may, under appropriate circumstances and in keeping with the expressed intent of a legislative body, elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective." Lowe's Cos., Inc. v. Cardwell, 813 S.W.2d 428, 430 (Tenn. 1991). Thus, once the court can appropriately elide the "objectionable features" of the statute, the remainder is "valid

and enforceable." Gibson Cnty. Special Sch. Dist. v. Palmer, 691 S.W.2d 544, 551 (Tenn. 1985).

We note that, as codified, section 29-26-121 does not have a severability clause. However, "the General Assembly has approved the practice of elision through the enactment of a general severability statute." State v. Crank, 468 S.W.3d 15, 28 (Tenn. 2015) (citing Tenn. Code Ann. § 1-3-110).[10] "[T]he legislature's endorsement of elision does not automatically make it applicable to every situation; however, when a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted, then elision of the unconstitutional portion is appropriate." In re Swanson, 2 S.W.3d 180, 189 (Tenn. 1999) (citing State v. Tester, 879 S.W.2d 823, 830 (Tenn. 1994); State v. Murray, 480 S.W.2d 355, 356–57 (Tenn. 1972)).

Recognizing the legislature's generally legitimate role to legislate in this area of the law, we conclude that elision is appropriate in this case. The overriding purpose of the statutory scheme can survive in this instance. Thus, we elide section 29-26-121(f) to make it permissive only, in order to retain the core discretionary functions of trial courts in discovery, while providing a framework for protective orders over ex parte interviews with non-party treating healthcare providers. We elide from subsection (f)(1) the phrase, "Such petition shall be granted under the following conditions." Under the elided version of the statute, a trial court can exercise its appropriate discretion over procedural discovery matters and also retain the power to determine what is admissible at trial.

When trial courts permit ex parte interviews with non-party treating healthcare providers, they must enter protective orders that comply with HIPAA. We note that subsection (f)(1)(C) addresses HIPAA requirements for protective orders under this section. Thus, we leave this provision undisturbed.

Similarly, to ensure compliance with HIPAA, we leave subsection (f)(2) intact. We construe the specific language of this statutory provision as in no way placing any

---

[10] This statute provides:

It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the code would otherwise be unconstitutional or ineffective. If any one (1) or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance.

Tenn. Code Ann. § 1-3-110 (2014).

limitations or changes on procedural rules related to the admissibility of any such evidence at trial.[11] Thus, the remainder of section 29-26-121(f) will remain valid and enforceable. See Gibson Cnty. Special Sch. Dist., 691 S.W.2d at 551.

As elided, section 29-26-121(f) will read as follows:

(1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101.

(A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;

(B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews;

(C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview, including all copies, at the end of the litigation;

(ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

(2) Any healthcare provider's disclosure of relevant information in response to a court order under this section, including, but not limited to, protected health information, opinions as to the standard of care of any defendant, compliance with or breach of the standard, and causation of the alleged injury, shall be deemed a permissible disclosure under Tennessee law.

---

[11] We do not address subsection (f)(3) because the parties have raised no issue about that subsection in this appeal.

(3) Nothing in this part shall be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action.

Tenn. Code Ann. § 29-26-121(f).  The burden is on the defendants to demonstrate that the patients' non-discoverable health information will remain confidential if permission is granted to engage in ex parte interviews.[12]

In summary, the elided statute allows defendants in healthcare liability actions to petition trial courts for qualified protective orders for ex parte interviews with non-party treating healthcare providers, but it leaves the manner of disposition of such petitions to the sound discretion of trial courts.  See In re NHC–Nashville Fire Litigation, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008) ("Generally, the granting, denying, or modifying of a protective order relating to discovery procedures under Rule 26.03 rests within the sound discretion of the trial court." (citations omitted)).  Upon review, the Court is confident that the legislature "would have enacted" section 29-26-121(f) "with the objectionable features omitted," leaving the remainder of the statute fully "valid and enforceable." Gibson Cnty. Special Sch. Dist., 691 S.W.2d at 551.  The statute as elided is "consistent with the expressed legislative intent." Crank, 468 S.W.3d at 29 (citing Tester, 879 S.W.2d at 830).  Accordingly, we hold the elided statute constitutional.

## CONCLUSION

We vacate the trial court's May 11, 2016 qualified protective order and remand the case to the trial court for reconsideration based upon the guidance provided in this

---

[12] Guidance for trial courts in entering these protective orders may be found in a Georgia Supreme Court decision encouraging "trial courts in authorizing such interviews, to fashion orders carefully and with specificity as to scope." Baker v. Wellstar Health Sys., Inc., 703 S.E.2d 601, 605 (Ga. 2010).  Specifically, the court provided that the trial court should provide the following in its orders:

(1) the name(s) of the health care provider(s) who may be interviewed; (2) the medical condition(s) at issue in the litigation regarding which the health care provider(s) may be interviewed; (3) the fact that the interview is at the request of the defendant, not the patient-plaintiff, and is for the purpose of assisting defense counsel in the litigation; and (4) the fact that the health care provider's participation in the interview is voluntary.  In addition, when issuing or modifying such orders, trial courts should consider whether the circumstances—including any evidence indicating that ex parte interviews have or are expected to stray beyond their proper bounds—warrant requiring defense counsel to provide the patient-plaintiff with prior notice of, and the opportunity to appear at, scheduled interviews or, alternatively, requiring the transcription of the interview by a court reporter at the patient-plaintiff's request.

Id. (internal citations omitted).

opinion. Costs of this appeal are assessed to the Defendant/Appellees, Timothy P. Klepper and Overton Surgical Services, and their sureties, for which execution may issue, if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE